UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM MARTINEZ,<br><br>    Plaintiff,<br><br>v.<br><br>K ALLISON, et al.,<br><br>    Defendants. | Case No. 23-cv-04863-PCP<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND, AND GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*** <br><br>Re: Dkt. No. 2 |

Adam Martinez, an inmate at Pelican Bay State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983.

The lawsuit is now before the Court for review under 28 U.S.C. § 1915A. Mr. Martinez's complaint is dismissed because Mr. Martinez did not allege facts necessary to support his claims. In addition, Mr. Martinez may have improperly sued several defendants despite their lack of involvement in the alleged wrongs.

Dismissal is with leave to amend to the extent that Mr. Martinez can truthfully remedy these defects.

**I.    BACKGROUND**

At all relevant times, Mr. Martinez was incarcerated at Pelican Bay State Prison in Crescent City, California ("PBSP").

Mr. Martinez alleges the California Department of Corrections and Rehabilitation adopted a policy that allows inmate-enemies to be housed in the same units within a prison ("Policy"). He represents that PBSP was placed on lockdown on November 18, 2022, due to the Policy. He alleges that the Policy was adopted and/or implemented by Defendant Allison, the former Secretary for CDCR, and by Defendant Robertson, the former Warden of PBSP. Mr. Martinez

alleges that the Policy "was enforced" on December 23, 2022, by Defendants Allison and Robertson, and by Defendant Deters, a captain at PBSP. Compl. at 2–3.

Mr. Martinez alleges that he was "terminated from his work assignment," and not allowed to receive visits, packages, or canteen privileges, on November 19, 2022. He alleges this "arbitrar[y] and capricious[] punish[ment]" was imposed on "all Mexicans," although the punished inmates had not committed any rule violations. He alleges that this punishment was imposed by Defendants Davis, Medina, Alderete, Coffman, Ortiz, Avila, Love, Ford, and Balestra, correctional officers at PBSP; Defendants Silva and Kennison, sergeants at PBSP; and Defendant Deters. *See id*. at 3. It is unclear how this punishment relates to the Policy.

Mr. Martinez alleges that on December 13, 2023,[1] officers failed in their duty to protect him from violence at the hands of other inmates. Defendants Silva allowed Mr. Martinez yard time, pursuant to a list of inmates to be given yard time that day. Defendant Davis escorted Mr. Martinez from his cell to a holding cell. Defendants Medina and Alderete conducted an unclothed search of Mr. Martinez. As Mr. Martinez walked toward the yard, Defendant Silva said, "you better come back." Once Mr. Martinez reached the yard, he "realized both documented enemies were being placed in the same yard." He then was attacked by "an inmate." Mr. Martinez was struck in the head, and later was informed he had been hit by a rock. He believes Defendants Silva, Davis, Medina, and Alderete were aware he would be attacked. He also believes Defendants Robertson, Deters, Silva, Davis, Medina, Alderete, Kennison, Coffman, and Avila were obligated to, but did not, search the yard for anything that could be used as a weapon before placing Mr. Martinez in that yard. *See id*. at 7–8. It is unclear how this attack relates to the Policy.

After Mr. Martinez was hit in the head, he fought back. He then "was taken down" by Defendants Kennison, Coffman, and Avila. Mr. Martinez alleges these Defendants caused him to hit his head on the ground when he was taken down and that they used excessive force for the situation. *See id*. at 7.

On December 26, 2022, Mr. Martinez was assessed a rules violation for fighting. On

---

[1] The Court believes this date may be an error and encourages Mr. Martinez to correct it in his amended complaint.

2

1  January 13, 2023, a disciplinary hearing was conducted by Defendant Frisk, a lieutenant at PBSP.
2  Mr. Martinez alleges that Defendant Frisk refused to call Mr. Martinez's witnesses or to allow Mr.
3  Martinez to present any evidence. Mr. Martinez also alleges Defendant Frisk would not allow him
4  to question witnesses. *See id*. at 8.

5      This action was filed on or after December 19, 2023. *Compare id*. at 9–10 (signed and
6  dated by plaintiff) *with Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (applying the
7  mailbox rule to prisoner's § 1983 complaint). Mr. Martinez sues the above-named Defendants,
8  and S. Smith, the current Acting Warden for PBSP. *See* Compl. at 2.

9  **II.**    **Legal Standard**

10     Federal courts must screen any case in which a prisoner seeks redress from a governmental
11 entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must
12 identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim
13 upon which relief may be granted, or seek monetary relief from a defendant immune from such
14 relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v.*
15 *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

16 **III.**    **Analysis**

17     **A.**    **Eighth Amendment Claims**

18     Mr. Martinez claims Defendants failed to protect him, and used excessive force against
19 him, in violation of the Eighth Amendment. Compl. at 3, 7.

20     The "'treatment a prisoner receives in prison and the conditions under which he is confined
21 are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832
22 (1994). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate
23 food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the
24 safety of the inmates.'" *Id.* A prison official violates the Eighth Amendment when two
25 requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious,
26 *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison
27 official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id*.
28 (citing *Wilson*, 501 U.S. at 297).

The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

Here, Mr. Martinez must clarify whether the inmate who attacked him was one of his documented enemies prior to the date of the attack. *See* Compl. at 7 (stating his "documented enemies were being placed in the same yard," but stating he was attacked by "an inmate" without specifying whether this was a documented enemy). If so, then it is more likely that Defendants were deliberately indifferent to his safety by placing him on the same yard as a known enemy. If, however, the attack was carried out by a random inmate, then Mr. Martinez would have to show that Defendants did not act promptly to stop the attack before he could show deliberate indifference.

For an excessive force claim, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *Whitley*, 475 U.S. at 320–21; *Jeffers v. Gomez*, 267 F.3d 895, 912–13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot).

Here, Mr. Martinez alleges that three correctional officers intentionally applied force to his person, and that this caused him an injury. *See* Compl. at 7. On amendment, he must explain that this force was not used in a good-faith effort to restore discipline. For example, if Mr. Martinez was complying with all officers' instructions, then it is less likely that force was necessary.

**B.      Fourteenth Amendment Claims**

Mr. Martinez claims that he was deprived of due process during his disciplinary hearing, in violation of the Fourteenth Amendment. *See* Compl. at 8, 9. He also appears to claim a violation of his rights under the Equal Protection Clause. *See id.* at 3.

4

### 1. Due Process Claim

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property." *Bd. of Regents v. Roth*, 408 U.S. 564, 570–71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995) ("The more familiar office of the Due Process Clause of the Fourteenth Amendment is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a state."). In the prison context, only certain deprivations trigger the Due Process Clause. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (concluding that a brief loss of privileges does not "present a dramatic departure from the basic conditions" of prison life, and thus is not a deprivation of real substance).

Here, Mr. Martinez must explain what punishment was meted out before the Court can determine whether the Due Process Clause applies to his claim. Mr. Martinez should be as specific as possible on amendment, and explain what property or privilege was taken away, and how long that deprivation lasted. If Mr. Martinez's punishment included a loss of good-time credits, then he also must state the nature of his sentence so that the Court can ensure the instant civil rights action is the correct way for Mr. Martinez to seek relief.[2] Mr. Martinez should state whether he was sentenced to a specific term of years, to a term of years to life, or to life without the possibility of parole.

### 2. Equal Protection Claim

It appears that Mr. Martinez may wish to state a claim for violation of the Equal Protection Clause. *See* Compl. at 3 (alleging that an "arbitrar[y] and capricious[] punish[ment]" was imposed on "all Mexicans"). "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). A plaintiff alleging denial of equal

---

[2] If Mr. Martinez's punishment increased the length of time he must spend in prison, then he may need to seek relief via a habeas action before he can pursue damages via a civil rights action. *See Heck v. Humphrey*, 512 U.S. 477, 486–487 (1994) (announcing a conviction must be vacated before damages for that conviction may be sought); *Edwards v. Balisok*, 520 U.S. 641, 645 (1997) (applying *Heck* bar to claim that officials used unconstitutional procedures in a disciplinary hearing that resulted in the deprivation of time credits if "the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment").

protection under 42 U.S.C. § 1983 based on a suspect classification, such as race, must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Here, Mr. Martinez has identified a suspect class. *See* Compl. at 3 ("all Mexicans"). On amendment, he must provide more facts about what punishment was imposed, and what events preceded its imposition.

### C. Defendants

Mr. Martinez sues Defendant Allison, the former Secretary for CDCR; Defendant Robertson, the former warden of PBSP; Defendant Smith, the current Acting Warden for PBSP; Defendant Deters, a captain at PBSP; Defendant Frisk, a lieutenant at PBSP; Defendants Silva and Kennison, sergeants at PBSP; and Defendants Davis, Medina, Alderete, Coffman, Ortiz, Avila, Love, Ford, and Balestra, correctional officers at PBSP. Compl. at 2.

"In a § 1983 suit …. each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). There is no liability under section 1983 on the theory that one is strictly responsible for the actions or omissions of another. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983."). It is insufficient for a plaintiff generally to allege that supervisors knew about a constitutional violation and that they generally created policies and procedures that led to the violation. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

Here, Defendants Deters, Frisk, Silva, Kennison, Davis, Medina, Alderete, Coffman, Ortiz, Avila, Love, Ford, and Balestra appear to be proper defendants. Each of these Defendants either interacted directly with Mr. Martinez during the events described above or was responsible for some action (such as searching the yard for potential weapons) which immediately preceded his injury.

#### 1. Supervisory Defendants

Mr. Martinez has not shown that Defendants Allison, Robertson, or Smith ("Supervisory Defendants") are proper Defendants to this action.

Defendant Smith is accused of no wrongdoing whatsoever. *See generally* Compl. Indeed, it is unclear from the Complaint whether Defendant Smith was even employed by PBSP at the time of the alleged incidents. *See generally id*. (suing Defendant Robertson, the former Warden, and Defendant Smith, the current Acting Warden). This must be explained on amendment.

Although Defendants Allison and Robertson are accused of approving and/or implementing the Policy, Mr. Martinez has not shown that he was injured pursuant to the Policy. And even if he was, a supervisor cannot be held liable due to his or her general involvement in creating a policy. *See Hydrick*, 669 F.3d at 942; *see also Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (finding that conclusory allegations that supervisor promulgated unconstitutional policies and procedures which authorized unconstitutional conduct of subordinates do not suffice to state a claim of supervisory liability).

If Mr. Martinez chooses to sue any of the Supervisory Defendants upon amendment, Mr. Martinez must show some personal involvement by that Defendant in the harm which befell him. If Mr. Martinez was attacked by a documented enemy, it may be enough to allege that other prisoners had been attacked by documented enemies after adoption of the Policy but before Mr. Martinez was attacked, that the Supervisory Defendants knew this, and that they still enforced the Policy. *See, e.g.*, *Wilk v. Neven*, 956 F.3d 1143, 1146 (9th Cir. 2020) (a reasonable factfinder could find the warden liable as supervisor in a failure-to-protect suit because only the warden or his designee had the authority to add a person to an inmate's enemy list and there was evidence plaintiff submitted a request to place an inmate, who later attacked him, on the list).

**IV.   CONCLUSION**

This action is dismissed with leave to amend.

Mr. Martinez's *in forma pauperis* application is **GRANTED**. The initial partial filing fee is $30.00. *See* 28 U.S.C. § 1915(b)(1) (requiring a court to assess an initial filing fee of 20 percent of a prisoner's average monthly deposits or monthly balance, whichever is greater). A copy of this order and the attached instructions will be sent to Mr. Martinez and the institution's trust account office.

Mr. Martinez may file a FIRST AMENDED COMPLAINT within **thirty-five days** from

7

the date this order is filed. The first amended complaint must include the caption and civil case number used in this order (CV 23-4863-PCP (PR)) and the words FIRST AMENDED COMPLAINT on the first page. If Mr. Martinez files a first amended complaint, he must allege facts that demonstrate he is entitled to relief on every claim. An amended complaint supersedes the original complaint. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992) (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

**Failure to file an amended complaint within thirty-five days and in accordance with this order will result in a finding that further leave to amend would be futile, and this action will be dismissed.**

It is Mr. Martinez's responsibility to prosecute this case. Mr. Martinez must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED**.

Dated: April 15, 2024

_____
P. CASEY PITTS
United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE**

The prisoner shown as the plaintiff or petitioner on the attached order has filed a civil action in forma pauperis in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid.

If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis and these instructions.

**The prisoner's name and case number must be noted on each remittance.** The initial partial filing fee is due **within thirty days** of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:     Plaintiff/Petitioner