UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM MARTINEZ,<br><br>   Plaintiff,<br><br> v.<br><br>K ALLISON, et al.,<br><br>   Defendants. | Case No. 23-cv-04863-PCP<br><br>**ORDER DISMISSING AMENDED COMPLAINT WITH FURTHER LEAVE TO AMEND** |

Adam Martinez, an inmate at Pelican Bay State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983. The Court dismissed Mr. Martinez's original complaint with leave to amend. *See* Dkt. No. 8. Mr. Martinez thereafter filed an amended complaint. Dkt. No. 9 ("Am. Compl.").

Upon review of the amended complaint under 28 U.S.C. § 1915A, the Court concludes that the amended complaint contains the same defects as the original complaint. The Court will give Mr. Martinez **one final chance** to amend. If he chooses to file a second amended complaint, Mr. Martinez **must** remedy the defects identified below, or this lawsuit will be dismissed.

**I. Background**

 **A. Procedural Background**

At all relevant times, Mr. Martinez was incarcerated at Pelican Bay State Prison in Crescent City, California ("PBSP"). *See generally* Am. Compl.

Mr. Martinez sues K. Allison, the former the former Secretary for the California Department of Corrections and Rehabilitation ("CDCR"); J. Robertson and S. Smith, the former and acting Wardens for PBSP; L. Deters, a Captain at PBSP; J. Frisk, a Lieutenant at PBSP; J. Silva and D. Kennison, both Sergeants at PBSP; and Alderete, A. Avila, B. Balestra, K. Coffman,

M. Davis, M. Ford, G. Love, Medina, and A. Ortiz, all Correctional Officers at PBSP (individually, "Officer"; together, "the Correctional Officers"). *Id*. at 1, 3–5.[1]

This action was filed on or after December 19, 2023. *Compare* Dkt. No. 1 at 9–10 (signed and dated by plaintiff) *with Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (applying the mailbox rule to prisoner's § 1983 complaint). The Court screened the original complaint pursuant to 28 U.S.C. § 1915A, and gave Mr. Martinez detailed instructions regarding what he must allege to state cognizable claims for violation of his civil rights. *See* Dkt. No. 8.

**B.   New Policy**

Mr. Martinez alleges that CDCR adopted a policy that allows inmate-enemies to be housed in the same units within a prison ("Policy"). Am. Compl. at 2. He alleges that the Policy was created by Secretary Allison, adopted by Warden Robertson, and enforced by Captain Deters. *Id*. at 6.

Mr. Martinez represents that PBSP was placed on lockdown on November 18, 2022, due to gang violence following implementation of the Policy. *Id*. at 2, 6. Conflictingly, he also represents that the Policy was not enforced until December 23, 2022. *See id*. at 6. He alleges that the "new policy created 'gladiator' fights and assaults and stabbings." *Id*.

Mr. Martinez alleges that "defendants [k]new" that violence would follow implementation of the policy when "they placed southerners and Bulldogs in the same yard." *Id*. at 7. He explains that for over twenty-five years, "southerners and Bulldogs are individually and mortal enemies." *Id*.

Mr. Martinez alleges that on November 19, 2022, he was "arbitrarily and capriciously punished" by Captain Deters, Sergeant Silva, and the Correctional Officers. *See id*. at 6. Mr. Martinez alleges that he was "terminated from his work assignment," and not allowed to receive visits, packages, or canteen privileges. He alleges this "arbitrar[y] and capricious[] punish[ment]" was imposed on "all Mexicans from Southern[n] California," although the punished inmates had not committed any rule violations. *Id*.

---

[1] The Court uses the page numbers applied by the Case Management/Electronic Case Files system.

2

### C. Failure to Protect

On December 13, 2022, Mr. Martinez was given outdoor time on the "yard." Sergeant Silva had "a list in his hands" of inmates who were to be given time on the yard. Release to the yard was overseen by Sergeant Silva and Officers Davis, Alderete, and Medina. *See id*. Mr. Martinez alleges that Officer Davis "walked up to [Mr. Martinez's] cell door and told [him] it's your turn." *Id*. Mr. Martinez was escorted to a holding cell. Officer Davis left, and Mr., Martinez was strip-searched by Officers Medina and Alderete. *See id*.

Mr. Martinez alleges that, as he left the building, Sergeant Silva said, "you better come back from this fight." *Id*. at 8. As Mr. Martinez crossed the yard, "he realized both validated and known enemies were being placed in the same yard." *Id*. He believes that Officers Medina and Alderete, and other unnamed officers standing nearby, "were fully aware that a fight was about to happen." *Id*.

"[A]n inmate walk[ed] towards" Mr. Martinez. Mr. Martinez then was "hit hard on his head," causing a head injury.[2] He started to fight, and then "was taken down" by Sergeant Kennison, Officer Coffman, and Officer Avila. He "hit[] the floor hard," which he believes aggravated the injury to his head. He claims without detail that Sergeant Kennison and Officers Coffman and Avila "used excessive force physical force against him." *Id*.

After Mr. Martinez received medical treatment, he was asked to "sign a CDCR chrono" which would state "that the two enemies could walk in the same yard." *Id*. at 9.

Mr. Martinez alleges that rocks should have been removed from the yard so they could not be used as weapons. He blames the failure to remove rocks on Warden Robertson, Captain Deters, Sergeants Silva and Kennison, and Officers Alderete, Avila, Coffman, Davis, and Medina. *See id*.

### D. Disciplinary Action

On December 26, 2022, Mr. Martinez was given a rules violation for fighting. *See id*. at 9.

Mr. Martinez's disciplinary hearing was conducted by Lieutenant Frisk. Mr. Martinez alleges that Lieutenant Frisk said, "I am finding you guilty you guys got along once why can't you

---

[2] From other allegations in the Amended Complaint, the Court assumes Mr. Martinez was hit by a thrown rock.

3

1 guys get along." Mr. Martinez claims that Lieutenant Frisk found him guilty despite "knowing I could not avoid the confrontation." *Id*.

## II. Legal Standard

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. Analysis

### A. Eighth Amendment Claims

Mr. Martinez claims Defendants failed to protect him, and used excessive force against him, in violation of the Eighth Amendment. Am. Compl. at 2, 6–9.

The "'treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the safety of the inmates.'" *Id.* A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id*. (citing *Wilson*, 501 U.S. at 297).

#### 1. Failure to Protect

The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health

4

or safety by failing to take reasonable steps to abate it. *Id.* at 837.

Although Mr. Martinez states that he was placed on a yard with "validated and known enemies," he does not actually state that he was attacked by one of those enemies. *See* Am. Compl. at 8. Nor does he actually state that he was attacked by a member of a rival gang. *See id*. If Mr. Martinez was attacked by a known enemy, then it is more likely that Defendants were deliberately indifferent to his safety by placing him on the same yard as a known enemy. If, however, the attack was carried out by a random inmate, then Mr. Martinez would have to show that Defendants somehow knew that particular person would attack Mr. Martinez, or did not act promptly to stop the attack before he could show deliberate indifference. In order to state a cognizable failure-to-protect claim, Mr. Martinez must identify in any amended complaint the individual or individuals who attacked him and the reason why Defendants knew of the risk posed to Mr. Martinez by the attacker or attackers.

### 2. Excessive Force

For an excessive force claim, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Jeffers v. Gomez*, 267 F.3d 895, 912–13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *see, e.g., Simmons v. Arnett*, 47 F.4th 927, 933 (9th Cir. 2022) (concluding that guard's decision to shoot the closer of two inmates who were fighting with sponge rounds, which was the lowest level of force available to him, to stop the fight and keep staff and prisoners safe was not an excessive use of force); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (holding

5

that pepper-spraying fighting inmates a second time after hearing coughing and gagging from prior spray was not malicious and sadistic for purpose of causing harm, where initial shot of spray had been blocked by inmates' bodies).

Here, Mr. Martinez alleges that three correctional officers intentionally applied force to his person, that this force was excessive, and that this caused him an injury. *See* Am. Compl. at 8. As this force was used to break up an ongoing fight, *see id*., it may have been used in a good-faith effort to restore discipline. Mr. Martinez also alleges that the force was "excessive" without explaining why the amount of force used exceeded the amount that was necessary to end the fight. Whether the force was excessive is a legal conclusion, and Mr. Martinez is required to plead facts supporting that conclusion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (explaining that at the pleading stage courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

To state a cognizable claim, Mr. Martinez must allege that the force was not used in a good-faith effort to restore discipline and must explain why the force was excessive. For example, if Mr. Martinez and his attacker were complying with all officers' instructions, then it is less likely that force was necessary and more likely that the force used was excessive.

### B.     Fourteenth Amendment Claims

Mr. Martinez claims that he was deprived of due process during his disciplinary hearing, in violation of the Fourteenth Amendment. *See* Am. Compl. at 10. He also appears to claim a violation of his rights under the Equal Protection Clause. *See id*. at 6.

#### 1.     Due Process Claim

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property." *Bd. of Regents v. Roth*, 408 U.S. 564, 570–71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995) ("The more familiar office of the Due Process Clause of the Fourteenth Amendment is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a state."). In the prison context,

only certain deprivations trigger the Due Process Clause. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (concluding that a brief loss of privileges does not "present a dramatic departure from the basic conditions" of prison life, and thus is not a deprivation of real substance).

Here, Mr. Martinez has not established that process was due at all. Mr. Martinez does not state how he was punished after Lieutenant Frisk's guilty finding, *see* Am. Compl. at 9–10, so the Court cannot determine whether the interests at stake were significant enough that the Due Process Clause applies to his claim. Mr. Martinez should be as specific as possible on amendment and explain what property or privilege was taken away and how long that deprivation lasted. If Mr. Martinez's punishment included a loss of good-time credits, then he also must state the nature of his sentence so that the Court can ensure the instant civil rights action is the correct way for Mr. Martinez to seek relief.[3] Mr. Martinez should state whether he was sentenced to a specific term of years, to a term of years to life, or to life without the possibility of parole.

Once a protected interest is established, either through the Due Process Clause itself or through a state statute or regulation, the court must determine what process is due before the interest may be taken away. *See Wilkinson v. Austin*, 545 U.S. 209, 224–25 (2005). In the prison context, the United States Supreme Court has established five procedural requirements. *See Wolff v. McDonnell*, 418 U.S. 539, 564–70 (1974). First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *See id*. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." *Id.* Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* (citation omitted). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present

---

[3] If Mr. Martinez's punishment increased the length of time he must spend in prison, he may need to seek relief via a habeas action before he can pursue damages via a civil rights action. *See Heck v. Humphrey*, 512 U.S. 477, 486–487 (1994) (holding that a conviction must be vacated before damages for that conviction may be sought); *Edwards v. Balisok*, 520 U.S. 641, 645 (1997) (applying *Heck* bar to claim that officials used unconstitutional procedures in a disciplinary hearing that resulted in the deprivation of good time credits where "the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment").

documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," which includes the ability to obtain that documentary evidence in the first place. *Id.* at 566. Fifth, "[w]here an illiterate inmate is involved ... or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or ... to have adequate substitute aid ... from the staff or from a[n] ... inmate designated by the staff." *Id*. at 570.

Here, Mr. Martinez does not actually explain what Lieutenant Frisk did, or failed to do, that deprived Mr. Martinez of due process. *See* Am. Compl. at 9–10. If he chooses to amend his due process claim, Mr. Martinez must identify at least one of the five procedural protections above that was missing from his disciplinary proceedings.

### 2.     Equal Protection Claim

It appears that Mr. Martinez may wish to state a claim for violation of the Equal Protection Clause. *See* Am. Compl. at 6 (alleging that an "arbitrar[y] and capricious[] punish[ment]" was imposed on "all Mexicans from Southern[n] California" although the punished inmates "had not committed any rule violations."). "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on a suspect classification, such as race, must plead intentional unlawful discrimination or allege facts that are susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Here, Mr. Martinez has identified a suspect class. *See* Am. Compl. at 6 ("all Mexicans from Southern[n] California"). But the Court cannot evaluate the merits of Mr. Martinez's equal protection claim without further details regarding the alleged disparate treatment. On amendment, Mr. Martinez should provide more facts about what punishment was imposed and what events preceded its imposition. For example, although Mr. Martinez claims the punishment was arbitrary

8

and capricious, he also represents that a lockdown was necessary due to gang violence following implementation of the Policy, which had caused "'gladiator' fights and assaults and stabbings." *See id*. at 2, 6. If the locked-down inmates were all members of the Sureños, as is suggested by the Amended Complaint's other references to that gang and by the class limiter of being "from Southern[n] California," the lockdown may not have been capricious but may instead have been necessary to protect inmates from gang violence.

### C. Defendants

"In a § 1983 suit … each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). There is no liability under section 1983 on the theory that one is strictly responsible for the actions or omissions of another. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983."). It is insufficient for a plaintiff generally to allege that supervisors knew about a constitutional violation and that they generally created policies and procedures that led to the violation. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

Here, Captain Deters, Lieutenant Frisk, Sergeant Silva, Sergeant Kennison, and Officers Alderete, Avila, Coffman, Davis, and Medina appear to be proper defendants. These defendants either interacted directly with Mr. Martinez during the events described above or are alleged to have been responsible for some action (such as searching the yard for potential weapons) which immediately preceded his injury. Mr. Martinez's allegations against all other defendants, however, are inadequate.

#### 1. Supervisory Defendants

Mr. Martinez has not alleged that Defendants Allison, Robertson, or Smith ("Supervisory Defendants") are proper Defendants to this action.

Defendant Smith is accused of no wrongdoing whatsoever. *See generally* Am. Compl. Indeed, it is unclear from the Amended Complaint whether Defendant Smith was even employed by PBSP at the time of the alleged incidents. *See generally id*. (suing Defendant Robertson, the former Warden, and Defendant Smith, the current Acting Warden). Any amended complaint must explain why Defendant Smith is a proper defendant.

Although Defendants Allison and Robertson are accused of approving and/or implementing the Policy, Mr. Martinez has not shown that he was injured pursuant to the Policy. And even if he was, a supervisor cannot be held liable due to his or her general involvement in creating a policy. *See Hydrick*, 669 F.3d at 942; *see also Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (finding that conclusory allegations that supervisor promulgated unconstitutional policies and procedures which authorized unconstitutional conduct of subordinates do not suffice to state a claim of supervisory liability).

If Mr. Martinez chooses to sue any of the Supervisory Defendants upon amendment, Mr. Martinez must show some personal involvement by that Defendant in the harm which befell him. If Mr. Martinez was attacked by a documented enemy, it may be enough to allege that other prisoners had been attacked by documented enemies after adoption of the Policy but before Mr. Martinez was attacked, that the Supervisory Defendants knew this, and that they still enforced the Policy. *See, e.g.*, *Wilk v. Neven*, 956 F.3d 1143, 1146 (9th Cir. 2020) (a reasonable factfinder could find the warden liable as supervisor in a failure-to-protect suit because only the warden or his designee had the authority to add a person to an inmate's enemy list and there was evidence plaintiff submitted a request to place an inmate, who later attacked him, on the list).

### 2. Uninvolved Officers

Mr. Martinez sues Officers Balestra, Ford, Love, and Ortiz, but does not allege any wrongdoing by those persons. It appears that these Correctional Officers were merely "at B-Facility yard #2 during the release," and so were present "when [Mr. Martinez's] incident happened." Am. Compl. at 5. No other action or inaction is attributed to them. *See generally id*.

If Mr. Martinez wants to sue Officers Balestra, Ford, Love, and Ortiz in an amended complaint, he must identify some action they took or failed to take which caused him injury. For example, although Mr. Martinez states these officers "just watch[ed]" as he was attacked, *id.*, he also alleges that the fight was ended by Sergeant Kennison, Officer Coffman, and Officer Avila, *see id*. at 8. To state a claim against Officers Balestra, Ford, Love, and Ortiz for "just watch[ing]," Mr. Martinez must explain why these four officers should have intervened in a fight that had already been stopped by Sergeant Kennison, Officer Coffman, and Officer Avila.

## IV. Conclusion

Mr. Martinez's amended complaint is dismissed with leave to amend.

Mr. Martinez may file a SECOND AMENDED COMPLAINT within **thirty-five days** from the date this order is filed. The second amended complaint must include the caption and civil case number used in this order (CV 23-4863-PCP (PR)) and the words SECOND AMENDED COMPLAINT on the first page. If Mr. Martinez files a second amended complaint, he must allege facts that demonstrate he is entitled to relief on every claim. Mr. Martinez is encouraged to **carefully review this order and remedy each of the defects** identified herein.

An amended complaint supersedes the preceding complaint. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992) (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

If Mr. Martinez does not file a second amended complaint within thirty-five days which remedies the defects identified in this order, this **will** result in a finding that further leave to amend would be futile, and this action **will be dismissed**.

It is Mr. Martinez's responsibility to prosecute this case. Mr. Martinez must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED**.

Dated: April 15, 2025

_____
P. CASEY PITTS
United States District Judge

11