UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM MARTINEZ,<br><br>        Plaintiff,<br><br>v.<br><br>K ALLISON, et al.,<br><br>        Defendants. | Case No. 23-cv-04863-PCP<br><br>**ORDER OF SERVICE IN PART AND DISMISSAL IN PART** |

Adam Martinez, an inmate at Pelican Bay State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983. The Court dismissed Mr. Martinez's original complaint with leave to amend. *See* Dkt. No. 8. Mr. Martinez thereafter filed an amended complaint, which the Court again dismissed with leave to amend. Dkt. Nos. 9, 10. Mr. Martinez now has filed a second amended complaint ("SAC"). Dkt. No. 14.

Upon review of the second amended complaint under 28 U.S.C. § 1915A, the Court concludes that Mr. Martinez has stated cognizable claims for failure to protect and for the application of excessive force. The failure-to-protect claim is stated against defendants Allison, Robertson, Smith, Deters, Alderete, Balestra, Davis, Ford, Love, Medina, Ortiz, and Silva. The excessive force claim is stated against defendants Avila, Coffman, Ford, Kennison, and Love. All other claims and defendants are dismissed.

**I.    Background**

    **A.    Procedural Background**

At all relevant times, Mr. Martinez was incarcerated at Pelican Bay State Prison in Crescent City, California ("PBSP"). *See generally* SAC.

Mr. Martinez sues K. Allison, the former the former Secretary for the California

Department of Corrections and Rehabilitation ("CDCR"); J. Robertson and S. Smith, the former and acting Wardens for PBSP; L. Deters, a Captain at PBSP; J. Frisk, a Lieutenant at PBSP; J. Silva and D. Kennison, both Sergeants at PBSP; and Alderete, A. Avila, B. Balestra, K. Coffman, M. Davis, M. Ford, G. Love, Medina, and A. Ortiz, all Correctional Officers at PBSP (individually, "Officer"; together, "the Correctional Officers"). *Id*. at 1–2, 4–7.[1]

This action was filed on or after December 19, 2023. *Compare* Dkt. No. 1 at 9–10 (signed and dated by plaintiff) *with Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (applying the mailbox rule to prisoner's § 1983 complaint). The Court screened the original and first amended complaints pursuant to 28 U.S.C. § 1915A, and gave Mr. Martinez detailed instructions regarding what he must allege to state cognizable claims for violation of his civil rights. *See* Dkt. Nos. 8, 10.

Mr. Martinez alleges that CDCR adopted a policy that allows inmate-enemies to be housed in the same units within a prison ("Policy"). SAC at 8. He alleges that the Policy was created by Secretary Allison, adopted by Warden Robertson and Acting Warden Smith, and enforced by Captain Deters. *Id*.

Mr. Martinez alleges that on December 13, 2022, he was released into the yard at the same time as a member of a rival Security Threat Group ("STG"). *Id*. at 9–10. Specifically, Mr. Martinez appears to be a member of the Sureños and was released into the yard along with a member of the Fresno Bulldogs. *See id*.; *see also id*. at 13 (suggesting Mr. Martinez is a Sureño). A member of the Fresno Bulldogs pretended to tie his shoe but instead filled a beanie with rocks, then used this improvised weapon to attack Mr. Martinez. *See id*. at 9–11. Mr. Martinez alleges that defendants Silva, Davis, Alderete, Ford, and Medina made the decision to release Mr. Martinez into the yard at the same time as a member of the Fresno Bulldogs; and that defendants Balestra, Ford, Love, Ortiz, Medina, and Alderete observed the Fresno Bulldog manufacture a weapon under the guise of tying his shoe. *See id*.

Mr. Martinez alleges that he fought back when he was attacked. *See id*. at 11. He also alleges that the fight had concluded, and the inmates were walking away from each other, when

---

[1] The Court uses the page numbers applied by the Case Management/Electronic Case Files system.

2

officers intervened. *See id*. at 12. Mr. Martinez alleges that he "was taken down by" defendants Kennison, Coffman, Avila, and Love, although the fight had already ceased. *See id*. at 11–12. He alleges that defendant Ford stood by and watched this unnecessary use of force. *See id*. at 11.

Mr. Martinez was issued a disciplinary citation following the fight. The disciplinary hearing was conducted by defendant Frisk. *See id*. at 15–16. Mr. Martinez alleges that defendant Frisk limited the witnesses and evidence available at the disciplinary hearing, and that this action deprived Mr. Martinez of due process. *See id*. Mr. Martinez alleges that he was found guilty of violating the rules, and as punishment was deprived of certain privileges and lost good-time credit. *See id*. at 16.

Mr. Martinez alleges that his right to equal protection was violated when "all Mexican[]" inmates lost privileges for a period of several months. *See id*. at 15. Mr. Martinez also alleges, however, that it was "STG II Sureños" that lost privileges, and that this occurred following gang violence. *See id*. at 16.

## II.     Legal Standard

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.     Analysis

### A.     Eighth Amendment Claims

Mr. Martinez claims Defendants failed to protect him, and used excessive force against him, in violation of the Eighth Amendment. Liberally construed, Mr. Martinez's Eighth Amendment claims are cognizable.

The "'treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate

3

food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the safety of the inmates.'" *Id.* A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id.* (citing *Wilson*, 501 U.S. at 297).

The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837. Here, Mr. Martinez alleges that defendants knowingly placed him in a yard with a member of a rival gang, and that there was a history of violence between members of his and the rival gang. *See generally* SAC. This is sufficient to allege that defendants were deliberately indifferent to Mr. Martinez's safety by placing him on the same yard as a known enemy.

For an excessive force claim, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Jeffers v. Gomez*, 267 F.3d 895, 912–13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *see, e.g., Simmons v. Arnett*, 47 F.4th 927, 933 (9th Cir. 2022) (concluding that

guard's decision to shoot the closer of two inmates who were fighting with sponge rounds, which was the lowest level of force available to him, to stop the fight and keep staff and prisoners safe was not an excessive use of force); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (holding that pepper-spraying fighting inmates a second time after hearing coughing and gagging from prior spray was not malicious and sadistic for purpose of causing harm, where initial shot of spray had been blocked by inmates' bodies). Here, Mr. Martinez alleges that the fight between him and the Fresno Bulldog had already ceased before defendants applied force to his person. *See* SAC at 11–12. If the fight had already ceased, then it is less likely that force was needed to restore discipline. Mr. Martinez has thus sufficiently alleged that the use of force was excessive.

### B. Due Process Claim

Mr. Martinez claims that he was deprived of due process during his disciplinary hearing in violation of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property." *Bd. of Regents v. Roth*, 408 U.S. 564, 570–71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995) ("The more familiar office of the Due Process Clause of the Fourteenth Amendment is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a state."). In the prison context, only certain deprivations trigger the Due Process Clause. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (concluding that a brief loss of privileges does not "present a dramatic departure from the basic conditions" of prison life and thus is not a deprivation of real substance).

Here, Mr. Martinez alleges that his punishment included the loss of good-time credits. *See* SAC at 16. Because this punishment increased the length of time Mr. Martinez must spend in prison, he must seek relief via a habeas action before he can pursue damages via a civil rights action. *See Heck v. Humphrey*, 512 U.S. 477, 486–487 (1994) (holding that a conviction must be vacated before damages for that conviction may be sought); *Edwards v. Balisok*, 520 U.S. 641, 645 (1997) (applying *Heck* bar to claim that officials used unconstitutional procedures in a disciplinary hearing that resulted in the deprivation of good time credits where "the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment").

5

Because Mr. Martinez must seek relief via a habeas action before obtaining damages, his due process claim is dismissed without prejudice.

### C. Equal Protection Claim

Mr. Martinez claims that he was deprived of his rights under the Equal Protection Clause when he and other inmates were stripped of privileges.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on a suspect classification, such as race, must plead intentional unlawful discrimination or allege facts that are susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Mr. Martinez alleges that "[a]ll Mexicans, Southern Hispanics, STG II Sureños, Mexicans from Southern California were punished." SAC at 15. He represents that this occurred after multiple fights between the Sureños and the Fresno Bulldogs. *See id*. The SAC reveals that the lockdown of rival gangs was necessary due to gang violence following implementation of the Policy. *See generally id*. The loss of privileges thus was not due to Mr. Martinez's membership in a race-based class, but rather due to his membership in the Sureños. *See id*.

Mr. Martinez's equal protection claim fails on the merits and is dismissed.

### IV. Conclusion

1. Liberally construed, the SAC states a failure-to-protect claim against defendants Allison, Robertson, Smith, Deters, Alderete, Balestra, Davis, Ford, Love, Medina, Ortiz, and Silva; and an excessive force claim against defendants Avila, Coffman, Ford, Kennison, and Love. All other claims and defendants are dismissed.

2. The Court orders service of the amended complaint on defendants and orders them to respond to Mr. Martinez's Eighth Amendment claims. Service on defendants shall proceed under the California Department of Corrections and Rehabilitation's ("CDCR") E-Service Program for civil rights cases from prisoners in CDCR custody. In accordance with the program,

the Clerk is directed to serve on CDCR via email the following documents: The SAC and exhibits thereto (Dkt. No. 14), this order of service, a CDCR Report of E-Service Waiver form, and a summons. The Clerk also shall serve a copy of this order on Mr. Martinez.

3. No later than **forty (40) days** after service of this order via email on CDCR, CDCR shall provide the Court a Completed CDCR Report of E-Service Waiver advising the Court whether all defendants will be waiving service of process without the need for service by the United States Marshal Service ("USMS"), or whether any defendant declined to waive service or could not be reached.

4. CDCR shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within **twenty-one (21) days**, shall file with the Court a waiver of service of process for each defendant who is waiving service.

5. If any defendant does not waive service, then upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare a USM-285 Form. The Clerk shall provide to the USMS the completed USM-285 forms and copies of this order, the summons, and the operative complaint for service upon the non-waiving defendant. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

6. No later than **ninety (90) days** from the filing date of this order, defendants shall file **one comprehensive motion for summary judgment or other dispositive motion** with respect to the Amended Complaint. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure. A motion for summary judgment also must be accompanied by a separate *Rand* notice so that Mr. Martinez will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment). Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.

7. If any defendant is of the opinion that this case cannot be resolved by summary judgment, he or she shall so inform the Court prior to the date the summary judgment motion is

due. Information regarding the Court's Alternative Dispute Resolution Program is available on the website for the United States District Court for the Northern District of California.

8. Mr. Martinez's opposition to the dispositive motion shall be filed with the Court and served on defendants no later than **twenty-eight (28) days** from the date defendants' motion is filed. Mr. Martinez is advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).

9. Defendants **shall** file a reply brief no later than **fourteen (14) days** after Mr. Martinez's opposition is filed.

10. All communications by Mr. Martinez with the Court must be served on defendants or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

11. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. **No further court order under Federal Rule of Civil Procedure 30(a)(2) is required before the parties may conduct discovery.** Mr. Martinez is advised to read Federal Rule of Civil Procedure 37, which requires each party to "in good faith confer[] or attempt[] to confer with" the opposing party regarding a discovery dispute, before seeking court action to resolve such a dispute.

12. It is Mr. Martinez's responsibility to prosecute this case. Mr. Martinez must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED**.

Dated: December 4, 2025

_____
P. CASEY PITTS
United States District Judge